UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10726-RGS

FRANCISCO TRONCOSO

v.

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY

MEMORANDUM AND ORDER ON
APPELLANT'S MOTION TO REVERSE
AND APPELLEE'S MOTION TO AFFIRM
THE DECISION OF THE COMMISSIONER

February 9, 2012

STEARNS, D.J.

Appellant Francisco Troncoso seeks a review of a final decision of the Commissioner of Social Security adopting the determination of Administrative Law Judge (ALJ) Joel Gardiner that he is not disabled within the meaning of the implementing regulations of the Social Security Act (Act). *See* 20 C.F.R. § 404.1520(g). Troncoso challenges three of the ALJ's findings: (1) that his testimony about his subjective feelings of pain was not wholly credible; (2) that he is able to adequately communicate in the English language; and (3) that his age, for purposes of the disability determination, was to be set at his chronological age of forty-nine years. Troncoso's appeal is properly before this court pursuant to 42

U.S.C. § 405(g).  The Commissioner in a cross-motion asks that the court affirm the ALJ's decision.

## PROCEDURAL BACKGROUND

Troncoso first applied for Social Security Disability Insurance benefits on March 3, 2008, alleging a disability onset date of June 17, 2007.  The Social Security Administration (SSA) denied his claim initially and again after reconsideration.  Troncoso then requested a hearing before an ALJ, which was held on January 26, 2010.  Troncoso and a vocational expert (VE) testified.  Troncoso was represented by counsel and was assisted by an interpreter.  On February 18, 2010, the ALJ issued a decision adverse to Troncoso, finding that despite his being impaired, he retained the residual functional capacity (RFC) to perform light and sedentary work.  The Decision Review Board (DRB) remanded Troncoso's case to the ALJ with instructions that he give further consideration to the extent of Troncoso's maximum RFC and his fluency in English.  The DRB also instructed the ALJ to take additional testimony from the VE to clarify the assessed limitations on Troncoso's occupational base.

A second hearing was convened on October 14, 2010, at which Troncoso and a substitute VE testified.  Troncoso was again represented by counsel and assisted by an interpreter.  On November 18, 2010, the ALJ issued a decision reaffirming (with slight modifications) his earlier finding that Troncoso retained a

sufficient RFC to perform light and sedentary work.  The DRB failed to complete a timely second review, and on February 28, 2011, the ALJ's decision became the final decision of the Commissioner.

## FACTUAL BACKGROUND

Troncoso was born on February 11, 1961, in the Dominican Republic.  He has lived in the United States since 1989.  Troncoso attended school in Santo Domingo through the seventh grade.  He can read and write Spanish, but has difficulty communicating in English.  Troncoso worked as a janitor from approximately 1990 to 2007.  He has not worked at gainful employment since 2007.  Troncoso currently shares an apartment with a friend, but lived on his own in 2009 and 2010.  He spends most of his time at home where he does approximately fifteen to twenty-five minutes of housework daily.  He occasionally visits his sister, and drives to his girlfriend's home every day.  He babysits his girlfriend's children, ages six and eleven, two to three times a week during the school year for approximately fifteen to forty minutes at a time, and for longer periods during the summer.

### *Medical History*

On November 2, 2006, Troncoso was seen by Thomas Pacheco, a physician's assistant (P.A.), at Boston University Orthopedic Surgical Associates (BUOSA), after presenting with complaints of pain in his left shoulder.  An MRI

revealed a partial-to-almost-full-thickness tear of Troncoso's rotator cuff.[1] On June 19, 2007, after the injury had progressed to a full-thickness tear, Dr. Timothy Foster of BUOSA performed rotator cuff repair surgery on Troncoso. On September 6, 2007, and again on October 16, 2007, both Dr. Foster and P.A. Pacheco noted that Troncoso was progressing well with physical therapy.

Troncoso was reexamined by Dr. Foster on August 28, 2008, after reporting pain in his right shoulder. An MRI revealed a full-thickness rotator cuff tear on Troncoso's right side. On October 7, 2008, Dr. Foster performed rotator cuff repair surgery on Troncoso's right shoulder. A follow-up examination on November 13, 2008, found Troncoso to be doing well and he was referred for physical therapy. On January 6, 2009, Dr. Foster indicated on a disability questionnaire that Troncoso could not then return to work, but that he would be further evaluated later in the month. Troncoso began physical therapy for his right shoulder in February of 2009, and on April 7, 2009, was reported to be making good progress.

In 2009, Troncoso visited the Whittier Street Health Center (Whittier)

---

[1] The rotator cuff of the shoulder is "the upper half of the capsule of the shoulder joint reinforced by the tendons of insertion of the supraspinatus, infraspinatus, teres minor, and subscapularis muscles." Stedman's Medical Dictionary 418 (26th ed. 1995).

complaining of joint pain.[2] He was prescribed Tramadol for his pain, and referred for a rheumatology examination. On November 10, 2009, Troncoso saw Dr. Raphael Kieval, a rheumatologist, at Boston Medical Center. Dr. Kieval diagnosed Troncoso with benign arthralgias[3] and noted that he could not find any explanation for Troncoso's symptoms.

On February 2, 2010, Troncoso presented again at Whittier with complaints of pain in his left heel, which was diagnosed as probable plantar fasciitis. He received injections of Kenalog and Marcaine solution on March 20, 2010, and two weeks later reported that he had not since experienced pain. Troncoso returned to Whittier multiple times in 2010, complaining of joint and back pain. He began physical therapy for his back in the summer of 2010. As of August 19, 2010, Troncoso was taking Motrin, aspirin, Tramadol, and Tylenol/codeine #3 for pain.

*Medical Review*

On September 30, 2008, Dr. Mark Siegal, an independent medical consultant, reviewed Troncoso's medical records and completed an RFC assessment. Dr. Siegal found that Troncoso could occasionally lift ten pounds and

---

[2] In November of 2008, Troncoso had seen Dr. Olarawaju Oladipo at Whittier complaining of shoulder and neck pain. Dr. Oladipo's examination disclosed lumbar tenderness with no neurological deficit, mild degenerative changes in the cervical spine, and no symptoms of arthritis.

[3] Arthralgia is "[s]evere joint pain, especially one not inflammatory in character." Stedman's Medical Dictionary 149 (26th ed. 1995). "Benign" denotes the mild character of an illness. *Id.* at 197.

frequently lift less than ten pounds, but that he was limited in his ability to push and pull with his upper extremities. Dr. Siegal noted that Troncoso could stand, walk, or sit for about six hours in an eight hour work day, and that he could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Siegal also noted that while Troncoso had unlimited capacity to handle, finger, or feel, he had limited ability to reach in all directions.

## DISCUSSION

The Commissioner's findings are conclusive so long as they are supported by substantial evidence and the Commissioner has applied the correct legal standard. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). "Substantial evidence . . . means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence. . . . [The] question [is] not which side [the court] believe[s] is right, but whether [the ALJ] had substantial evidentiary grounds for a reasonable decision . . . ." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998). The Commissioner's findings, however, "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

The Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  The Act further provides that:

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

Disability determinations follow the "sequential step analysis" mandated by 20 C.F.R. § 404.1520.  The analysis requires that the ALJ first determine whether a claimant was gainfully employed prior to the onset of the disabling condition.  At the second step, the ALJ must determine whether a claimant suffers from a severe impairment limiting his ability to work.  If the impairment is the same as, or equal in its effect to, an impairment (or combination of impairments) listed in Appendix 1 of the regulations, the claimant is presumptively deemed disabled.  If the impairment is not covered by Appendix 1, the fourth step of the analysis requires that the claimant prove that his disability is sufficiently serious to preclude a return

to his former occupation. If he meets that burden, the Commissioner at the fifth step is obligated to prove that there are other jobs in the national economy that the claimant is able to perform. *Gonzalez Perez v. Sec'y of HEW*, 572 F.2d 886, 888 (1st Cir. 1978) ("[A] claimant must establish that he can no longer perform his prior vocation before the government is obligated to prove that alternative employment is available for a person in claimant's condition.").

The ALJ found at Step 1 and Step 2 that Troncoso had not engaged in substantial gainful employment activity since June 17, 2007, and that he had the following severe impairments: (1) bilateral rotator cuff repairs, (2) cervical disc disease, and (3) benign arthralgias. At Step 3, the ALJ found that Troncoso's impairments did not meet or medically equal one or more of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.

Step 4 and Step 5 necessarily require an assessment of the claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(5). The ALJ followed the required two-step process in determining Troncoso's RFC.[4] First, the ALJ considered Troncoso's medical

---

[4] The two-step process for determining RFC is as follows: (1) the ALJ must determine whether the claimant has an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the complained of pain or other symptoms; and (2) if such an impairment exists, the ALJ must determine the extent to which the impairment limits the claimant's functioning. The second part of the test requires an evaluation of the intensity, persistence, and limiting effects of the claimant's symptoms. If statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by the objective medical evidence, the ALJ must make a finding on

history and determined that he had underlying medically determinable physical impairments that could reasonably be expected to produce his symptoms. Second, the ALJ found that Troncoso's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the RFC assessment. The ALJ determined at Step 4 that Troncoso's impairments precluded him from performing his past relevant work. At Step 5, however, the ALJ found that considering Troncoso's RFC, age, education, and work experience, he retained the ability to perform light or sedentary unskilled work in the national economy and therefore was not disabled.

On appeal, Troncoso first contends that the ALJ failed to offer adequate support for the determination that Troncoso's subjective complaints of pain were not fully credible. See *DaRosa v. Sec'y of Health and Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (the ALJ must state specific reasons for finding a claimant not credible). "[A] Court will not save [a] decision by inserting the basis for a finding where there was not substantial evidence to support it and no specific finding justifying it as a rational result." *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 310 (D. Mass. 1998). "In determining the severity of a claimant's pain, 'the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the

---

the credibility of the statements based on a consideration of the entire case record. *See* 20 C.F.R. § 404.1545(a)(2)-(3).

adjudicator must consider in assessing an individual's credibility.'" *Makuch v. Halter*, 170 F. Supp. 2d 117, 127 (D. Mass. 2001), citing Social Security Ruling (SSR) 96-7p.

If, after evaluating the objective findings, the ALJ determines that the claimant's reports of pain are significantly greater than what could be reasonably anticipated from the objective evidence, the ALJ must consider other relevant information. *Avery v. Sec'y of Health and Human Servs.*, 797 F.2d 19, 23 (1st Cir. 1986). Considerations capable of substantiating subjective complaints of pain include evidence of (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; and (5) any other factors relating to claimant's functional limitations and restrictions due to pain. *Id.* at 22; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

If, after weighing these factors, the ALJ concludes that a claimant's subjective complaints of pain lack credibility, he "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *DaRosa*, 803 F.2d at 26. The ALJ is not required to address every *Avery* factor in his written decision. *N.L.R.B. v. Beverly Enters.-Mass., Inc.*, 174 F.3d 13, 26 (1st Cir. 1999). Rather, consistent with SSR 96-7p, his "determination or decision

must *contain specific reasons* for the finding on credibility, supported by evidence in the case record, and must be *sufficiently specific* to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." SSR 96-7p, *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, at *4 (S.S.A. July 2, 1996) (emphases added).

Here, the ALJ's decision detailed specific reasons, based on substantial evidence, for his finding that Troncoso's subjective complaints of pain lacked credibility. First, the ALJ noted a lack of objective medical evidence to support Troncoso's alleged symptoms. The ALJ noted that Dr. Kieval, a specialist in arthritis, evaluated Troncoso on September 22, 2009, and November 10, 2009, and found no explanation for his claimed symptoms. The ALJ also noted that Dr. Oladipo, an orthopedist, examined Troncoso's shoulders on May 19, 2009, and found recovering strength and range of motion. The ALJ further noted that Dr. Kieval's and Dr. Oladipo's records were consistent with the medical evidence as whole.

Second, the ALJ found that Troncoso's testimony regarding his daily activities did not support his alleged physical limitations. The ALJ noted that Troncoso testified that he was only able to perform fifteen to twenty-five minutes of housework per day, could only sit for twenty-five to thirty minutes, and could

11

only lift five to eight pounds, and that he had had these limitations for more than four to five years. In contrast to these alleged limitations, the ALJ noted that Troncoso testified that he had previously lived by himself for a year, that he drove to his girlfriend's home each day where he often babysat his girlfriend's two children, aged six and eleven, a task that he had been performing for the past three to four years. Third, the ALJ noted that Troncoso had made inconsistent statements regarding his education level, his income, and his unemployment benefits status.[5]

Next, Troncoso argues that the ALJ failed to comply with the DRB remand order to evaluate his proficiency in English. The DRB had instructed the ALJ to "[e]valuate the claimant's literacy and make a proper finding pursuant to 20 [C.F.R. §] 404.1564." R. at 89. The regulation provides in relevant part:

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person

---

[5] During the second hearing, Troncoso testified that he had completed the fourth grade. Upon further inquiry, he stated that he had completed the seventh grade. Troncoso also stated that he had stopped working in June of 2007, but he was unable to explain why his income for 2007 was almost as much as it was for 2006, when he worked for the entire year. After further questioning, Troncoso said that he had received "checks" after his surgery. He first said that the checks came for five or six months, and then he said that he had received the last check in 2010. Troncoso also testified that he had never received unemployment compensation, but he had told Dr. Foster that he was collecting unemployment in October of 2007.

> may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

20 C.F.R. § 404.1564(5).

The record does not provide substantial evidence for the ALJ's finding that Troncoso is proficient in English. The ALJ stated in his decision that "[t]he claimant is able to communicate in English" and cited to Medical Record 6F to support this conclusion. The apparent significance of Medical Record 6F is its indication that on July 24, 2008, Troncoso visited P.A. Pacheco without the aid of an interpreter. When viewed in the context of the entire record, this one medical record does not support a finding that Troncoso is literate in English, particularly in the absence of any evidence that P.A. Pacheco did not speak some Spanish. The whole of Troncoso's medical records show that he required translators for the majority of his appointments and regularly required his prescription instructions to be printed in Spanish. *See, e.g.*, Medical Records, Exs. 1F, 3F, 4F, 10F, 12F, 13F. Indeed, P.A. Pacheco noted on July 24, 2008, the need to book an interpreter for Troncoso's next appointment. Troncoso also utilized translators throughout both ALJ hearings. He testified that he had studied English once a week for two months in the past but had failed the final test in the class, and that he was unable to write in English. Troncoso's disability benefits application does state that he can read and write in English, but he clarified at the hearing that his son filled out the

application form for him and made a mistake when listing Troncoso's English language abilities.

Although the ALJ's finding with regard to Troncoso's English proficiency was not supported by substantial evidence, this result does not change the validity of the ALJ's holding that Troncoso has the RFC to perform sedentary and light work. The VE testified that an individual with Troncoso's age, education, work experience, and RFC could perform light or sedentary unskilled jobs including bench assembler, polisher, machine tender, and press operator. When asked whether these jobs would be available even if Troncoso could not speak English, the VE testified that they would, because they consist of routine, repetitive tasks that are learned by demonstration.

Finally, Troncoso argues that the ALJ failed to consider the effect of Troncoso's borderline age when determining his RFC. The applicable regulation classifies age into three categories: (1) younger persons (under 50 years); (2) persons closely approaching advanced age (50-54 years); and (3) persons of advanced age (55 years and older). 20 C.F.R. § 404.1563(c)-(e). The regulation also provides:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

14

20 C.F.R. § 404.1563(b). Troncoso argues that because he was forty-nine years and nine months old on the date of the ALJ's decision, the ALJ should have assigned him to a higher age category when making the disability determination.

The Hearings, Appeals and Litigation Law Manual of the Social Security Administration (HALLEX) does provide that an ALJ may use additional vocational adversities, including limited English literacy and a history of unskilled employment, when considering whether to use the claimant's chronological age or a higher age category in a borderline situation. HALLEX II-5-3-2. However, an ALJ is not required to explain his use of a claimant's chronological age. *Id.*

Here, there was substantial evidence to support a finding that Troncoso's impairments did not warrant the use of a higher age category. Troncoso's impairments resulted largely from his bilateral rotator-cuff surgeries, both of which were healing normally after surgical repair, with no indication of complications based on his age. Troncoso was not diagnosed with arthritis, and there is no indication in the medical records that his joint pain will worsen with age. The ALJ presented the VE with a hypothetical that reflected Troncoso's chronological age and physical limitations, and the VE used this information to conclude that at least four different categories of jobs existed in significant numbers in the national economy that Troncoso could perform. There is no indication from the VE's testimony that Troncoso would be precluded from performing any of these jobs if

he had been fifty, rather than forty-nine, at the time of the hearing.

## ORDER

Because the ultimate conclusion of the ALJ, that Troncoso is not disabled within the meaning of the Act, is supported by substantial evidence in the record, the Commissioner's motion for an affirmance is <u>ALLOWED</u>.  Troncoso's motion to reverse or remand the decision of the ALJ is <u>DENIED</u>.  The Clerk will enter judgment for the Commissioner and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE